# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THEUT'S FLOWER BARN INC.,   Case No.

    Plaintiff,   Hon.

v.   **COMPLAINT**

THE KROGER CO.,

    Defendant.

## COMPLAINT

Plaintiff Theut's Flower Barn Inc. ("Theut's") complains against defendant The Kroger Co. ("Kroger") as follows:

### PARTIES

1. Theut's is a Michigan corporation with its principal place of business at 36615 Pound Road, Richmond, Michigan.

2. Kroger is an Ohio corporation with its principal place of business at 1014 Vine Street, Cincinnati, Ohio.

### JURISDICTION AND VENUE

3. The Court has jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.

4. Venue is proper in the Court under 28 U.S.C. § 1391 because Kroger conducts business within this judicial district.

### BACKGROUND FACTS

5. Theut's is a wholesale plant nursery that grows and sells plants to a variety of retailers across the United States.

6. Kroger is a large retail company that operates approximately 1,270 supermarkets in 16 states.

7. Theut's products are sold at approximately 1,200 of these stores.

8. Prior to 2022, Theut's sold plants directly to Kroger, which would then sell them directly to Kroger customers.

9. In 2022, Kroger changed its business model with Theut's, advising Theut's it would be shifting to a scan-based trading model, which functions much like a consignment arrangement.

10. By the time Kroger informed Theut's of these changes, Theut's had made plans and purchases for the 2023 growing season. Theut's had little choice but to agree to Kroger's changes to avoid losing money on these investments.

11. Theut's signed the Scan Based Trading Agreement ("Agreement") on December 12, 2022, which sets forth the specific payment terms and conduct of transactions between the parties. A copy of the Agreement is attached as **Exhibit A**.

12. Under a scan-based trading model, a supplier who delivers inventory to a retailer retains ownership of that inventory until it is purchased, and consequently "scanned," at the point of sale by the consumer. This is compared to the parties' prior business dealings, under which Kroger simply purchased the plants outright and then Kroger would sell them to the consumer directly.

13. Under a scan-based trading model, title to inventory passes briefly to the retailer immediately preceding scanning at the register, and the retailer then resells it to the consumer.

14. Therefore, under a scan-based trading model, Theut's retains title to all inventory until it is ultimately sold to a consumer, at which time Theut's is entitled to payment from Kroger.

15. Also in 2022, Kroger also informed Theut's that it had partnered with a merchandising group called National Garden Service to act as an intermediary between Theut's and Kroger.

16. As understood by Theut's, National Garden Service would coordinate delivery and care of Theut's plants while they were at Kroger's stores.

17. The Agreement requires Kroger and its agents to "use commercially reasonable efforts" to protect plants delivered by Theut's "as if they were its own." **Exhibit A, Section 3**.

18. The Agreement provides a methodology for calculating loss of inventory, which the Agreement calls "Shrink."

19. Specifically, Section 5(b) of the Agreement provides that Shrink is calculated as follows:

```
      Beginning Physical Inventory Units
 +    Net Units Shipped (for the period)
 -    Reported Sales Units ('852' scan data)
 =    Ending Perpetual Inventory Units
 -    Ending Physical Inventory Units
 =    Shrink Units (unaccounted inventory)
```

20. In other words, Shrink equals the number of units shipped minus units sold or otherwise lost through damage, theft, and so forth.

21. The Shrink calculation specifically includes theft and "physical destruction other than by natural causes." **Exhibit A, Section 6.**

22. Loss or damage caused by "fire, flood, wind, other natural disasters, loss of public utility service or other circumstances outside Kroger's control" remains with Theut's until title passes to Kroger at the point of sale to the consumer. Loss due to natural causes is not included in the Shrink calculation. **Exhibit A, Section 6.**

23. Under the Agreement, Theut's is responsible for calculating and tracking Shrink on a per-store basis. **Exhibit A, Section 5(b).**

24. The Agreement provides that, if Shrink is determined to be caused "by the negligent acts or willful misconduct of [a party's] employees, representatives, or agents," the responsible party will be 100% responsible for the resulting Shrink. **Exhibit A, Section 5(b).**

25. The Agreement also provides a calculation for Shrink % over a given period of time, which is determined as follows: Shrink % = Shrink Units / Net Units Shipped for the period.

26. If Shrink at a particular store exceeds 5%, Kroger and Theut's are required to perform "an immediate joint analysis to diagnose the cause of the Shrink" and "take corrective actions." **Exhibit A, Section 5(b)**.

27. In 2023, Theut's began to ship plants under the Agreement.

28. Issues quickly arose. Theut's immediately identified concerns regarding theft, improper care of plants, and improper signage.

29. For example, on February 6, 2023, Theut's informed National Garden Service that their plants at multiple Kroger stores do not have signs indicating pricing, which would negatively impact sales. **Exhibit B**.

30. Additionally, on February 22, 2023, Theut's was informed a number of plants were stolen from Store 356. **Exhibit C**.

31. Thefts at Store 356 continued, and Kroger failed to address the issue. In March 2023, Theut's informed Kroger it would not send any further shipments to the store until the theft issues were resolved. **Exhibit D**.

32. Kroger staff at multiple stores also negligently failed to water plants correctly, causing the plants to rot. **Exhibit E**.

33. Kroger has also permitted customers to take plants for free or extremely reduced prices, without paying Theut's according to the Agreement. **Exhibit F.**

34. In other words, some stores destroyed, lost, or gave away about half of the plants Theut's delivered to them. Theut's was not paid for this inventory.

35. For example, Theut's shipped 403 succulents to Store 620102. 236 of these were sold. Even accounting for the 4 succulents culled by NGS, 163 succulents were not sold, were not returned to Theuts, and were not otherwise accounted for, resulting in a Shrink percentage of 40% and a loss of $1,230.34.

36. Various representatives and agents for Kroger were informed of these issues, which occurred over several months and at several Kroger stores.

37. For the entirety of 2023, Theut's attempted to engage Kroger to work toward a resolution, but Kroger failed to act. **Exhibit G.**

38. As a result of Kroger's failure to prevent theft and to care for the plants correctly, as required by the Agreement, Theut's has incurred substantial losses.

39. In fact, some stores had up to 47% Shrink – well in excess of the 5% threshold in the Agreement.

40. Similar circumstances occurred at hundreds of other Kroger stores.

41. At no point has Kroger upheld its obligation to diagnose and correct the excessive Shrink.

42. Theut's has also incurred substantial losses due to Kroger's repeated markdowns and/or free giveaways of the plants without paying Theut's the prices set forth in the Agreement.

43. In 2023, the value of all missing product across all stores totaled in excess of $5,000,000.

## COUNT I – BREACH OF CONTRACT

44. Theut's restates the allegations in the foregoing paragraphs as it fully set forth here.

45. As detailed above, Theut's and Kroger entered into an Agreement, under which Theut's was to provide plants for Kroger to sell at its retail stores.

46. The Agreement is a valid and binding contract.

47. Kroger has materially breached the contract by, without limitation:

(a) refusing to water and properly protect the plants from theft, as required by Section 3(d) of the Agreement;

(b) refusing to diagnose and take corrective action to reduce Shrink to 5%, as required by Section 5(b) of the Agreement; and

(c) failing to reimburse Theut's 100% for Shrink caused by negligent acts of Kroger's employees, as required by Section 5(b) of the Agreement.

48. Theut's has been damaged by Kroger's breach in excess of $5,000,000 exclusive of attorney fees, costs, and interest.

WHEREFORE, Theut's respectfully requests that the Court enter a judgment in its favor and against Kroger for damages in excess of $5,000,000, plus interest, expenses, and attorney fees and award all other relief the Court deems appropriate.

### COUNT II – COMMON LAW AND STATUTORY CONVERSION

49. Theut's restates the allegations in the foregoing paragraphs as it fully set forth here.

50. As detailed above, Theut's and Kroger entered into an Agreement under which Theut's retains ownership of any plants delivered to Kroger retail stores until the plants are sold to a customer.

51. Because Kroger has given away and/or sold plants at reduced prices without paying Theut's the price set forth in the Agreement, it has improperly exercised dominion over Theut's property.

52. Theut's has suffered damage from Kroger's conversion in excess of $5,000,000 exclusive of attorney fees, costs, and interest because Theut's has been denied use of plants, which remained their property.

53. Under MCL 600.2919a, Theut's is entitled to recover three times the amount of the damages resulting from Kroger's conversion.

WHEREFORE, Theut's respectfully requests that the Court enter a judgment in its favor and against Kroger for damages in excess of $5,000,000, plus treble damages, interest, expenses, and attorney fees and award all other relief the Court deems appropriate.

Respectfully submitted,

BODMAN PLC

By: */s/ J. Adam Behrendt* (P58607)
    J. Adam Behrendt (P58607)
    Sinéad G. Redmond (P85718)
201 W. Big Beaver Road
Suite 500
Troy, MI 48084
248-734-6000

January 22, 2024    Attorneys for Plaintiff